### CRESCENT HOTEL COMPANY *v.* BRADLEY.

### Opinion delivered December 24, 1906.

MUNICIPAL CORPORATIONS—IDENTITY OF IMPROVEMENT DISTRICTS.—The object of Mansf. Digest, § 832, providing that where there is more than one improvement district in a city for the same general purpose, "the same member may be on two or more boards, or the boards of different districts may combine so as to form only one board for the whole territory to be thus improved so as to make the whole improvement uniform, but no money raised by assessment in one district shall be expended in another district," was to secure uniformity in the character of the improvement to be constructed, without destroying the separate identity of the several districts.

Appeal from Carroll Chancery Court; *T. H. Humphreys,* Chancellor; reversed.

#### STATEMENT BY THE COURT.

The city council of the City of Eureka Springs, by an ordinance passed September 6, 1889, created and laid out an improvement district known as "Water District No. 3" for the purpose of constructing a system of waterworks for the territory embraced in said district; and at the same time also created out of contiguous territory another district known as "Water District No. 4" for the purpose of constructing waterworks in that territory. Afterwards the city council created another improvement district known as "Water District No. 5" covering the entire City of Eureka Springs except the territory embraced in the other two districts, for the purpose of constructing waterworks for that territory.

A board of improvement was duly appointed by the city council for the respective districts, plans for said improvements were formed and estimates of the cost thereof duly made. By proper ordinances of the city council the cost of said improvements was levied upon the real property in the respective dis-

tricts, and assessments were duly levied on the property in accordance with the statute. It being found that all of said districts had been formed for the same general purpose, the several boards of improvement of the districts were combined so as to form only one board for the whole territory to be improved, in order that the improvement might be uniform. Thereafter on May 19, 1894, the combined board of improvement entered into a contract with one Brownell for the construction of the waterworks in the territory, at a cost of $75,600, to be paid for $10,000 in cash and the balance in bonds of the districts, in accordance with the plans and specifications. The work was completed by Brownell, and the board of improvement paid him in cash the sum of $10,000 ($7,600 out of funds of District No. 3, $2,400 out of funds of District No. 4) and issued to him bonds of said districts aggregating $65,000, divided as follows between the several districts: $25,200, District No. 3; $6,000, District No. 4; and $34,000, District No. 5.

On December 28, 1903, appellees, who are citizens and owners of real property in Water District No. 3, instituted this suit in equity against the board of improvement of said districts to compel them to readjust the liability of the several districts for the cost of said improvement and charge District No. 4 with the sum $6,200.25 of the bonded debt of District No. 3.

The complaint, after setting forth the facts as hereinbefore stated, contained the following allegations:

"That the said Brownell completed and performed said contract, and the said waterworks system was accepted by said commissioners, and in payment thereof said commissioners paid the said Brownell as follows out of the funds of said water improvement districts, towit: District No. 3, $7,600 in cash, in bonds $25,200; District No. 4, $2,400 in cash, in bonds $6,000; District No. 5, in bonds $34,400—making in all the sum of $75,600—of which amounts, as will be seen, said districts three and four paid in cash and bonds the sum of $41,200 on said contract to said Brownell.

"Plaintiffs say that, in making said apportionments of the amounts paid by said districts on said contract, said original commissioners did fraudulently, arbitrarily, and without just reason, or by mistake or oversight, prorate the payment of the cost of

said waterworks system, as follows, towit: District No. 3, $32,800; District No. 4, $8,400; and District No. 5, $34,400.

"Plaintiffs state that said apportionment, so fraudulently and arbitrarily made, was, as to District No. 3, unjust and disproportionate, as to the actual cost of the improvements in said district, and the same is unjust and disproportionate as to the relative cost of said improvements made in said districts three and four according to the assessed valuation of the real property in said districts.

"Plaintiffs say that from careful estimate made, taking as a basis the amount as a whole paid by said districts three and four for the improvements made in said districts, towit: the sum of $41,200, the same should have been apportionad as follows: District No. 3 should only have paid the sum of $26,590.06, or thereabouts, instead of $32,800 actually paid, which amount, $26,590.06, includes an amount of $1,933.26, paid for the laying and building of about 984 feet of eight-inch pipe, laid from the stand-pipe to the end of White Street, part of which pipe is outside of said district, which is used simply as a feeder for the systems in said two districts.

"In District No. 4 the cost of the improvement should have been for the actual improvements made in said district, on the basis above mentioned, the sum of $14,609.06, instead of the sum of $8,400, paid in cash and in bonds; leaving a deficit due by District No. 4, on the above basis, to District No. 3, of about $6,209.94 with six per cent. interest from date of the bond issue. That is, the amount of bonds that should have been issued by District No. 3, according to the basis above mentioned, after deducting the cash payment of $7,600 made, was only the sum of $18,990.06, instead of $25,200, as was issued, and the amount of bonds that should have been issued by District No. 4 should have been the sum of $12,209.94, instead of $6,000, as was issued; that is, admitting that the cash payments made were proper, which plaintiffs claim were far in excess of District No. 3, as to its proportionate share; and far too low in District No. 4, as to its proportionate share.

"Plaintiffs state that the inequitable distribution of the cost of the water system between said districts is made plain and apparent by the fact that District No. 4 has paid out its indebted-

ness in eight years, with a surplus of $500 in cash to its credit; while District No. 3 was bonded for sixteen years, and in an amount far in excess of its known resources, and far in excess of its just proportionment and its ability to pay.

"Plaintiffs say that the maturing accounts or bonds of said District No. 3 were so placed or made that the later payments of said bonds are far in excess of its annual resources, and it will be an utter physical and financial impossibility for it to meet its indebtedness, as matters stand now, unless the aid sought herein is granted, and is unjust to these plaintiffs and the other taxpayers in said district.

"Plaintiffs say that District No. 3 is now insolvent, and will be unable to meet its obligations and maturing bonds as the same become due. That the apportionment of the cost of the improvements made in said districts 3 and 4 was and is a fraud, and is unjust and inequitable as to these plaintiffs and other taxpayers of said district, and that the same was fraudulently and arbitrarily made, without regard to the rights of the taxpayers of said District No. 3.

"Plaintiffs say that in justice and equity said District No. 4 ought to pay at least the sum of $6,220.65 with interest at six per cent. per annum from date of bond issue of the said indebtedness of said District No. 3, so as to help and enable said District No. 3 to meet its maturing bonds and indebtedness, which amount plaintiffs say should have been charged to said District No. 4, and its bonds issued for that amount, instead of the same having been issued by District No. 3.

"Plaintiffs say that to not compel the payment of said sum by said District No. 4 will cause these plaintiffs and the other taxpayers in said District No. 3 great and irreparable injury, by causing said district to become greatly and hopelessly in debt and absolutely bankrupt, and will work great injury and loss to the bondholders of said district."

The prayer of the complaint is as follows:

"Wherefore, the premises being considered, plaintiffs on behalf of themselves, and on behalf of the other taxpayers of said district, pray that the defendants, as a Board of Water Commissioners in and for Improvement Districts 3, 4 and 5 as consolidated, be compelled to answer herein and to show cause, if

any, why this court should not, upon final hearing of this cause, render its judgment and an order of this court compelling the defendants, as commissioners of said Water Districts 3, 4 and 5, as consolidated, and their successors in office, to readjust the liability by the payment of at least $6,220.65, of the bonded indebtedness of said District No. 3, and make same a charge against said District No. 4, with interest at the rate of 6 per cent. per annum from date of bond issue, and that the said amount to be paid out of the funds of said District No 4, and that said commissioners be required to continue to collect said improvement district taxes in said District No. 4 until said amount, with interest, is paid, as is provided by the ordinances of the city of Eureka Springs, and for all other orders in the premises [to which] plaintiffs are in equity and justice entitled, and for all proper and necessary relief, and that they have judgment for their costs."

The Crescent Hotel Company, a corporation owning real property in District No. 4, was allowed to intervene as a defendant, and it filed an answer to the complaint, denying that there had been any fraud or mistake in apportioning the cost of improvement among the several districts, and alleging that the board of improvement in letting the contract for the work to Brownell acted for each district separately, and that the contract was entered into and the improvement made and paid for in money and bonds upon separate estimates for each district, so that no district became responsible for or paid for any work done outside of its own territory.

It is conceded that the apportionment of cost of improvement to District No. 5 is correct, and the aggregate amount, $41,200, apportioned to the other two districts, No. 3 and No. 4, is correct.

The court, in its final decree, found "that said apportionment had been arbitrarily made by said Brownell, and that same was not in accord with the estimates as had been previously made by the board to the city council, upon which estimates the council passed the ordinances levying the tax in said districts for payment of the improvements therein; that according to said estimates District No. 3 should have paid the sum of $27,466 of said $41,200, and District No. 4 should have paid the sum of $13,733.33

·of said $41,200; that the board erred and made a mistake in apportioning said costs, as had been arbitrarily made by said Brownell, to each of said districts, towit: the sum of $32,800 to District No. 3, and the sum of $8,400 to District No. 4, and that the same was unjust and inequitable as to said District No. 3. The court also finds that District No. 4 was entitled to a credit of $8,400 already paid by it on said bond issue, and that it was entitled to a further credit of the sum of $1,679, amount paid by it for a pipe line previously laid in said district prior to the contract with Brownell which was incorporated and used in constructing said system, leaving a balance due said District No. 3 the sum of $3,654.33 with interest from date of this decree at the rate of six per cent. per annum."

The court thereupon decreed that Water District No. 4 pay to Water District No. 3 said sum of $3,654.33 with interest aforesaid from date of decree.

Both parties appealed to this court.

*G. J. Crump,* for appellant.

1. In the organization of improvement districts, each, when formed, is an independent district. While the law provides for the consolidation of the boards of various districts, it can only be done for the purpose of making the improvement uniform. Kirby's Digest, § 5674. "No money raised by assessment in one district shall be expended in another district." *Ib.*

2. The evidence fails to establish fraud. Equity will not interfere unless facts are established from which a fraudulent intent may be fairly imputed to the contracting parties. 55 Ark. 148; 8 How. 134; 37 Ark. 145; 38 Ark. 419.

3. Before a contract will be reformed on the ground of mistake, it must appear that the mistake was mutual. 56 Ark. 320; 49 Ark. 425; 71 Ark. 614; 74 Ark. 336.

*James & Fuller,* for appellee.

1. The wrong as well as fraud perpetrated upon the taxpayers of District No. 3 is that, in letting the contract as a whole, this district is burdened with more than its proportionate share of the cost. It is not sought to reform the contract, but only to compel a recipient of its benefits to pay its proportionate share of

the cost. It is fundamental law that no person shall be deprived of life, liberty or property without due process of law. Const., art. 2, § 8. See, also, § 22, *Ib.* And the taking of property or levying of taxes for special improvements is within the doctrine of "due process of law." 1 Cooley on Taxation (3 Ed.), 51; *96 U. S. 108; 111 U. S. 701; 110 U. S. 516.*

2. Every taxpayer has a right to be heard in court in reference to any erroneous levying of taxes against his property. 2 Cooley on Tax. (3 Ed.), 1377. And he may institute suit on behalf of himself and all others interested to protect the inhabitants of a county, city or town against the enforcement of any illegal exactions whatever. Const., art. 16, § 13; 30 Ark. 102.

3. Under the state of facts in this case, equity alone can do complete justice, and it will always intervene in cases of fraud, accident or mistake. 2 Cooley on Tax. (3 Ed.), 1414, 1459, 1460. And, it will take jurisdiction where it is shown that there is fraud, intentional wrong or error in the method of assessment. 63 Ark. 576. Any intentional favoritism, even though from motives of public interest, if without express authority of law, will render void the tax procedings. 24 Mich. 173. See also 10 Ark. 416; 15 Ark. 275; 22 Ark. 557. No tax is legal which is not equally and impartially laid on the taxpayers. 24 Pac. 831. In their official capacity, boards of improvement districts are agents of the property owners of the districts. 42 Ark. 152; 48 Ark. 386; 52 Ark. 107; 55 Ark. 157.

The funds provided by the special assessments in districts 3 and 4 were trust funds to be used to the best advantage, and equity has jurisdiction to prevent the misapplication of public funds. 52 Arn. 541. It has jurisdiction, even if the individual taxpayer has an adequate remedy at law, in order to prevent a multiplicity of suits. Pomeroy's Eq. Jur. (3 Ed.), § § 243, 260; 30 Ark. 109. In equity fraud includes all acts which are injurious to another, and which involve a breach of trust or confidence, or of legal or equitable duty. 1 Story, Eq. Jur. § 187. And it may be inferred merely from relationship of trust and confidence between the parties. 16 Cyc. 85. See, also, 2 Pom. Eq. Jur. § 122; 1 Story, Eq. Jur. § 259.

*G. J. Crump,* for appellant, in reply.

Appellee's argument that they are being deprived of their property without due process of law has no application here. It is admitted that no more than the legal amount of taxes for the time was levied, and that it is being collected in the manner provided by law. As to the jurisdiction of the chancery court, that is conceded.

McCULLOCH, J., (after stating the facts.) The determination of this case turns mainly upon the question of fact whether the contract for the construction of the improvement apportioned the cost thereof to each district separately, or whether the board of improvement contracted for the work as a whole, and after its completion undertook to apportion the cost to the several districts. The preponderance of the evidence seems to sustain the contention of appellees that the apportionment of cost made by the board of improvement was more favorable to District No. 4 than the facts warranted (though this is not altogether clear, for the reason that the cost of the improvement under the contract with Brownell was less than the original estimates prepared under direction of the board and submitted to the city council when the assessments on property were levied); and if this was erroneously done by the board after the letting of the contract and the completion of the work, we can not say that the taxpayers of District No. 3 would be without remedy for correction of the mistake. On the other hand, if the board made a contract for construction of the improvement, apportioning the cost thereof separately to each district for the amount of work done in each, as it was their legal duty to do, then one of the districts can not be made to share an unjust burden imposed upon another district by a harsh contract entered into either through fraud or mistake of the board of improvement. The spirit of the Constitution, as well as the express letter of the statute, forbids that "money raised by assessment in one district shall be expended in another district," or that improvements contracted for in one district shall be paid for with money raised by assessments in another. The contract entered into by the board of improvement must be looked to in ascertaining whether or not the money about to be expended is for improvements made in this district; and if the board have wrongfully by fraud or culpable negligence imposed an unjust burden upon the district by a contract for excessive cost of the

improvement, the remedy is against them, and not against the taxpayers of another district who have been fortunate in securing a more favorable contract for the construction of improvements in their district.

Learned counsel for appellees have brought to our attention numerous authorities, including many decisions of this court, to the effect that a citizen and taxpayer should find ready relief against unlawful and oppressive taxation; but none of them would sustain a contention that the taxpayers of one locality can be called upon to share the burden of oppressive taxation in another, nor that one improvement district, which has secured a favorable contract for the construction of its improvement, can be required to share the burdens of its less fortunate neighbor, even though both districts be controlled by the same board, and the contracts made in the same way, at the same time and with the same contractor.

The statute in force at the time of organization of these districts provided that "where there is more than one district in the city for the same general purpose, the same member may be on two or more boards, or the boards of different districts may combine so as to form only one board for the whole territory to be thus improved, so as to make the whole improvement uniform; but no money raised by assessment in one district shall be expended in another district." Mansf. Digest, § 832.

Under this statute the separate identity of each district was intended to be preserved, so that "no money raised by assessment in one district shall be expended in another district;" and in order to accomplish the same end it was essential that separate contracts for the work in each district should be entered into. Not necessarily separate instruments or forms of contract, but contracts whereby the improvement and cost thereof in each district could be separated. Uniformity in the character of the improvement to be constructed, without destroying in any degree the separate identity of the several districts, was the sole object to be accomplished by the combination provided for in the statute.

This brings us to a consideration of the controlling question of fact, whether or not the contract was let upon separate estimates of the cost of the improvement in each district. We think that the evidence fully establishes the fact that it was let

upon separate estimates, and that, though the contract was a joint one for the work in the three districts, it was separate as to the work in each district. The original written proposal submitted to the board by the contractor was to do the whole of the work in all of the districts for a gross sum, but the contractor and three members of the board testify that separate estimates were made of the work in each district before the letting of the contract. The plans and specifications upon which the contract was based have been lost, and were not introduced in evidence. The contract recites a gross sum to be paid for the work, $10,000 of it payable in cash, and the remainder in bonds of the districts. The contract does not specify the proportion in which the cash was to be paid by the three districts, but it does specify the amount of bonds to be issued by each district to the contractor in payment for the improvement.

The witnesses state how much cash was to be paid, and was paid, by each of the districts.

There is very little conflict in the testimony upon this point. The only conflict grows out of a contradictory statement made by the contractor Brownell in a public speech wherein he said that, in apportioning the cost of the improvement, he could not figure it out, and that he had "arbitrarily" apportioned it. Now, if we should disregard the license usually accorded to political speakers in dealing with facts in a heated campaign, and hold this man literally to his words spoken under such circumstances, they do not tend to make out a case for the plaintiffs. If the contract for the improvement was let upon estimates apportioning the cost to the districts separately, and if the several districts entered into a contract for construction of the work according to the separate estimates, the fact that the estimated cost was "arbitrarily" apportioned affords no reason why District No. 4 should be required to pay more than it contracted to pay for its part of the improvement.

We conclude that the plaintiffs have shown no right to recover from District No. 4, and the decree was erroneous.

The decree is therefore reversed, and the cause remanded with directions to dismiss the bill for want of equity.